797 F. Supp. 1000

BELTON INDUSTRIES, INC., ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND GOVERNMENT OF COLOMBIA, AND ROYAL THAI GOVERNMENT, DEFENDANT-INTERVENORS

Consolidated Court No. 90–09–00474

(Dated March 24, 1992)

*Wilmer, Cutler, & Pickering* (*A. Douglas Melamed* and *Ronald I. Meltzer*), for Plaintiffs.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Vanessa P. Sciarra*), *Douglas S. Cohen*, Attorney-Advisor, Office of Chief Counsel for Import Administration, United States Department of Commerce, for Defendant.
*Willkie, Farr & Gallagher* (*William H. Barringer, Kenneth J. Pierce,* and *Daniel L. Porter*), for Defendant-Intervenor Royal Thai Government; *Mudge, Rose, Guthrie, Alexander & Ferdon* (*Michael P. Daniels, Christine Bliss*, and *Gregory Spak*), for Defendant-Intervenor Government of Columbia.

OPINION AND ORDER

CARMAN, *Judge:* Plaintiffs move for summary judgment in this consolidated action seeking to rescind the revocation and termination orders issued by the United States Department of Commerce ("Commerce") for certain textile mill products and apparel from Argentina, Columbia, Peru, Sri Lanka, and Thailand.[1] Because the Plaintiffs invoke the Court's jurisdiction pursuant to 19 U.S.C. § 1516a(a) (2)(B)(iii) (1988) and 28 U.S.C. § 1581(c) (1988), Plaintiffs' motion will be treated as one for judgment upon the agency record in accordance with Rule 56.1.[2]

Plaintiffs contend that no prior actual written notice of Commerce's intent to revoke and terminate those proceedings was served upon the Plaintiff petitioners, as required under the so called "sunset" provisions of the countervailing duty regulations. 19 C.F.R. § 355.25 (d)(4)(ii) (1990). Plaintiffs urge furthermore that because timely objections were filed on behalf of the American Textile Manufacturing Institute

---

[1] The revocation and termination orders that are the subject of this action are *Certain Textile Mill Products from Argentina; Revocation of Countervailing Duty Order*, 55 Fed. Reg. 32,940 (1990); *Certain Textile Mill Products and Apparel from Columbia; Termination of Suspended Countervailing Duty Investigations*, 55 Fed. Reg. 32,940 (1990); *Certain Textile Mill Products and Apparel from Peru; Revocation of Countervailing Duty Orders*, 55 Fed. Reg. 32,941 (1990); *Certain Textile Mill Products and Apparel from Sri Lanka; Revocation of Countervailing Duty Orders*, 55 Fed. Reg. 32,942 (1990); and *Certain Textile Mill Products from Thailand; Termination of Suspended Countervailing Investigation (in Part)*, 55 Fed. Reg. 48,885 (1990).

[2] The standard of review under these provisions is whether the agency's determination is based upon substantial evidence *on the record* and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988).

("ATMI") and its member companies, Commerce improperly disregarded its own regulations when it terminated the countervailing duty investigations.[3]

Defendant United States, opposing the motion, requests the Court to sustain the countervailing duty revocation and termination orders and seeks dismissal of the action. Defendant-Intervenors support the argument of Defendant.

### FACTS

In July 1984, ATMI and two domestic unions representing textile workers filed petitions with Commerce requesting countervailing duty investigations with respect to certain textile mill products and apparel from Argentina, Colombia, Peru, Sri Lanka, and Thailand. In November 1984, after the initiation of the investigation, several respondents maintained that ATMI was not an "interested party" within the meaning of 19 U.S.C. § 1677(9)(D) and (E) (1988) and, therefore, was ineligible to file a countervailing duty petition under 19 U.S.C. § 1671a(b)(1) (1988). Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Mem.") at 4. Commerce advised Wilmer, Cutler, and Pickering ("Wilmer"), counsel for petitioners and for Plaintiffs in this action, that Commerce would need more information about ATMI and the two domestic unions to determine if they were interested parties. See Administrative Record filed with the Court November 26, 1990 ("A.R. Doc."), Document 1 at 1.

Wilmer responded to Commerce and requested that the petitions be amended and that eight textile manufacturers, all members of ATMI, be added in their individual capacities as petitioners. A.R. Doc. 2 at 1, 10–11 and Ann. 1.[4]

In December 1984, Commerce issued five affirmative preliminary countervailing duty determinations, all of which discussed the question of ATMI's standing by reference to a related affirmative preliminary countervailing duty determination concerning textile mill products and apparel from Indonesia. 49 Fed. Reg. 49,672. (1984). See A.R. Doc. 3; 49 Fed. Reg. 49,667 (Argentina), 50,753 (Columbia), 49,678 (Peru), 49,687 (Sri Lanka), and 49,661 (Thailand) (1984). In the Indonesia determination Commerce indicated that ATMI had failed to provide its membership list or the products produced by its members, and concluded that ATMI was not an interested party and lacked standing as a petitioner. 49 Fed. Reg. at 49,673. Commerce, noting that absent other information it would have rescinded its investigations, determined that the original petitions in the textile investigation had been amended to name the

---

[3] The named Plaintiffs in this action are Belton Industries, Inc.; Burlington Industries, Inc.; Chatham Manufacturing Co.; Milliken & Co.; Mount Vernon Mills, Inc.; Shuford Mills, Inc.; Delta-Woodside Mills, Inc., West Point-Pepperell, Inc., Bibb Manufacturing Company, and JPS Textiles, all of which are successors in interest to J.P. Stevens & Co., Inc.; West Point-Pepperell, Inc.; and the American Textile Manufacturing Institute ("ATMI") for itself and on behalf of Belton Industries, Inc.; Burlington Industries; Chatham Manufacturing Co.; Milliken & Co.; Mount Vernon Mills, Inc.; and Shuford Mills, Inc.

[4] The added petitioning companies were Belton Industries, Inc.; Burlington Industries, Inc.; Chatham Manufacturing Co., Milliken Co.; Mount Vernon Mills, Inc.; Shuford Mills, Inc.; J.P. Stevens & Co.; and West Point-Pepperell, Inc.

eight textile manufacturers as petitioners and that "[t]hese eight companies collectively appear to satisfy the interested party requirements of the Act * * *." *Id.*

On March 12, 1985, Commerce published final affirmative countervailing duty determinations on certain textile mill products and apparel from Argentina, Peru, and Sri Lanka, issued countervailing duty orders for these countries respectively, and suspended countervailing duty investigations of certain textile mill products and apparel from Columbia and Thailand. A.R. Doc. 4; 50 Fed. Reg. 9,846 (Argentina), 9,871 (Peru), and 9,826 (Sri Lanka), and 9,863 (Columbia) (1985); Administrative Record covering the Thailand proceedings filed with the Court on March 10, 1991, as supplemented by Commerce on May 8, 1991 ("Thailand A.R. Doc."), Document 19; 50 Fed. Reg. 9,832 (1985) (Thailand). In all five of these determinations Commerce discussed the issue of ATMI's standing by reference to the related final countervailing duty determinations concerning certain textile mill products and apparel from Malaysia. *See* 50 Fed. Reg. 9,852, 9,853 (1985). Commerce again found that ATMI lacked standing and the eight companies added as petitioners "collectively" had standing.[5]

On February 26, 1990, Commerce published notice of intent to terminate the suspended countervailing duty investigations on certain textile products from Colombia and Thailand. A.R. Doc. 7; 55 Fed. Reg. 6,669 (1990). On March 1, 1990, Commerce published notice of its intent to revoke countervailing duty orders for certain textile mill products and apparel from Argentina, Peru, and Sri Lanka. A.R. Doc. 7; 55 Fed. Reg. 7,358 (1990). Additionally, Commerce published notice of intent to revoke the countervailing duty order pertaining to certain apparel from Thailand which had not been included in the suspension agreement. A.R. Doc. 7; 55 Fed. Reg. 7,356 (1990). The published notices indicated that any interested party who objected to the revocation or termination had until March 31, 1990, to submit objections in writing, and that if no interested party requested an administrative review or objected to the proposed action, Commerce would proceed with the revocations and terminations.

On February 28, 1990, Commerce sent letters to ATMI and to Wilmer, identifying them as "interested parties" and notifying them of Commerce's intent to revoke countervailing duty orders on certain textiles, textile products, and apparel from Argentina, Peru, and Sri Lanka. A.R. Doc. 6. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 7. Defendant concedes that in the Argentina case, while Wilmer was listed on the interested party list, ATMI, which was not on the list, was provided with a letter while Wilmer was not. *See* Def. Mem. at 8; A.R. Docs. 5, 6. In the Peruvian case, both ATMI and Wilmer were identified as interested parties and were sent letters to

---

[5] Commerce reaffirmed the standing of the eight petitioning companies in a later final determination covering textile mill products from Thailand. Thailand A.R. Doc. 20; 52 Fed. Reg. 7,636, 7,637 (1987).

that effect. A.R. Docs. 5, 6. In the Sri Lankan case Wilmer, but not ATMI, was identified as an interested party and was sent a notice letter.

With respect to Commerce's intent to terminate the suspended investigations in the Columbia and Thailand proceedings, there is no record evidence that Commerce served written notice upon ATMI, Wilmer, or any of the eight petitioning companies. Defendant concedes that while the interested party lists in the two suspended investigations include Wilmer, no copies of letters mailed to Wilmer or to any other parties could be located. Def. Mem. at 8 n. 11;

On March 30, 1990, Wilmer wrote a series of letters to Commerce which were substantially the same except for their references to specific investigations. A.R. Doc. 8; Thailand A.R. Doc. 4. Each of the letters stated that "on behalf of [ATMI] and its members companies, we hereby inform you that ATMI objects to" Commerce's proposed revocation and termination orders. In the letters, Wilmer identified the invoice numbers of the subject proceedings as well as the Federal Register notifications reflecting Commerce's intent to revoke and terminate those proceedings.

Commerce responded on May 29, 1990, to Wilmer acknowledging receipt of letters on behalf of ATMI objecting to Commerce's announced intent to revoke the countervailing duty orders and to terminate the suspended countervailing duty investigations. In the letter Commerce advised that because ATMI was not an interested party, its objection was invalid. However, Commerce gave ATMI an opportunity to provide additional information demonstrating ATMI was an interested party. A.R. Doc. 10; Thailand A.R. Doc. 9. Commerce also stated that it "[would] not accept the substitution of objections by other interested parties in place of that submitted by ATMI because such objections would be untimely pursuant to 19 CFR 355.25(d)(4)." *Id.*

On June 14, 1990, Wilmer responded to Commerce with a series of identical letters filed in each investigation. A.R. Doc. 11; Thailand A.R. Doc. 11.[6] Wilmer explained that the letters of March 30, 1990 had been written on behalf of ATMI which "was acting on behalf of the individual companies listed in the Attachment to [the] letter[s]. Each of those companies is a manufacturer of itemized like products — and therefore an interested party with the right to oppose the proposed revocations." *Id.*[7]

Later in June 1990, Commerce received letters from the governments of Argentina, Columbia, Sri Lanka, Peru, and Thailand arguing that Wilmer's March 30, 1990 opposition letters were properly rejected by Commerce because ATMI was not an interested party and Wilmer's subsequent attempt to object for the eight petitioning companies was untimely. A.R. Doc. 12; Thailand A.R. Doc. 16. On July 13, 1990, Wilmer responded to these arguments, contending that the reference to ATMI "and its member companies" provided an adequate basis for the objec-

---

[6] Although there is apparently no dispute that on June 14, 1990, Wilmer sent a letter for each investigation, the record contains only those letters pertaining to the Columbian and Thai investigations.

[7] The Court notes that the attachment to Wilmer's letter appears to name four of the eight petitioning companies.

tions because ATMI's member companies were known producers of like products and therefore met the interested party requirements. A.R. Doc. 13; Thailand A.R. Doc. 13.

On August 13, 1990, Commerce published final revocation and termination orders covering certain textiles, textile mill products, and apparel from Argentina, Columbia, Peru, and Sri Lanka. A.R. Doc. 14. On November 23, 1990, Commerce published a termination order covering the suspended countervailing duty investigation in certain textile mill products from Thailand, in part. Thailand A.R. Doc. 17.

In each of the final orders, Commerce set forth the reasons for its rejection of Wilmer's March 30, 1990 objection letters. Commerce determined, after indicating that ATMI had prior notice that it was not an interested party, that the only proper objections could have come from the eight petitioning companies; those objections were never raised because the objection letters did not clearly identify those companies. 55 Fed. Reg. at 32,940 (Argentina), 32,941 (Columbia), 32,942 (Peru), 32,943 (Sri Lanka), 48,885 (Thailand). Commerce concluded that because it received no valid objection to the proposed revocation and termination orders those orders should become final.

### DISCUSSION

The applicable regulations governing the dispute are set forth at 19 C.F.R. § 355.25(d)(4)(i)–(iii). They provide:

> (4)(i) If for four consecutive annual anniversary months no interested party has requested an administrative review, under § 355.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the Federal Register notice of 'Intent to Revoke Order' or, if appropriate, 'Intent to Terminate Suspended Investigation.'
>
> (ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.
>
> (iii) If by the last day of the fifth annual anniversary month no interested party objects, or requests an administrative review under § 355.22(a), the Secretary at that time will conclude that the requirements of paragraph (d) (1) (i) of this section for revocation or termination are met, revoke the order or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.

19 C.F.R. 355.25(d)(4)(i)–(iii) (1990).

The regulations make clear that, in addition to requiring publication in the Federal Register of an intention to revoke a countervailing duty order or terminate a suspended investigation, Commerce is required to serve written notice upon each interested party on Commerce's service

list, also known as the interested party list. The purpose of these notice requirements is obvious. Notice is designed to give interested parties an opportunity to be heard and to make not only timely but also *proper* objections.

Indeed, the Department of Commerce has recently rescinded its revocation of an antidumping finding because it failed to provide written notification to an interested party as required by 19 C.F.R. § 355.25 (d)(4)(ii). *See Polychloroprene Rubber from Japan; Recision of Revocation of Antidumping Finding*, 56 Fed. Reg. 5,979 (1991). Moreover, the fact that a petitioner might have had actual notice of an impending agency action sometime during the proceedings does not relieve the agency of its legal obligation to provide written notice when that kind of notice is prescribed in the agency's own regulations. *See Tex Mex Brick & Import Co. v. United States*, 63 Cust. Ct. 218, 221–22, 305 F. Supp. 927, 930–31 (1969), *aff'd*, 59 CCPA 1, C.A.D. 1024, 449 F.2d 1398 (1971).

Commerce published in the Federal Register notice of its intent to terminate the suspended investigations in the Columbia and Thailand proceedings on February 26, 1990. 55 Fed. Reg. at 6,669. With respect to these proposed agency actions, the record is devoid of any evidence that Commerce provided prior written notification to counsel for the Plaintiffs, ATMI, or to any of the eight petitioning companies which Commerce had previously found to collectively constitute an interested party.

In the proposed revocations of the countervailing duty orders covering Argentina, Peru, and Sri Lanka, there is evidence that written notice was sent to Wilmer, which appeared on the interested party list, only in the Peru and Sri Lanka proceedings. A.R. Doc. 6. In the Argentinean and Peruvian revocation cases, ATMI was sent written notice describing ATMI as an interested party although Commerce had previously determined that ATMI was a non-interested party.

To summarize, there is evidence that Commerce endeavored to serve proper written notice in only two of the three revocation proceedings; no evidence supports Commerce's compliance with the regulations in either of the two termination proceedings.

Nevertheless, Defendant argues that there is evidence in the record that petitioners in fact received notice of all the proposed revocations and terminations if not by written notice in all cases then by some other means; each of Wilmer's five March 30, 1990 objection letters referenced a specific revocation or termination proceeding in this action by both invoice number and name.

While one might conclude that these opposition letters demonstrate that the petitioning companies, through their counsel Wilmer, somehow had notice of all Commerce's proposed actions, that fact does not relieve Commerce of its legal obligation to comply with its own regulations. *See Tex Mex Brick*, 63 Cust. Ct. at 221–22, 305 F. Supp. at 930–31. As the facts of this case demonstrate, Commerce's written notice, where

given, tended to confuse and mislead, as when ATMI was mistakenly identified as an interested party on two occasions.

Accordingly, the Court finds that Commerce failed to provide proper written notice in accordance with specific provisions of 19 C.F.R. § 355.24(d)(4). Therefore, the Court holds that Commerce's revocations and terminations are not based upon substantial evidence on the record and are not in accordance with law.

Even if it could be successfully argued that Commerce provided proper notice of some of its proposed actions or that the petitioners had actual notice of all the proposed actions, the Court nevertheless finds that Commerce should have accepted the March 30, 1990 letters as proper and timely objections on behalf of the petitioning companies.

While it can be argued that the opposition letters were ambiguous as to who was objecting (ATMI alone or ATMI *and* the petitioning companies independently), the Court finds the letters adequately conveyed petitioners' intent, through their counsel Wilmer, to timely object to the proposed revocations and terminations. The Court reaches this conclusion after taking note of the potential prejudice that could have occurred to the petitioners on account of at least two of Commerce's notice letters, as well as the overall context in which the objections were made; it would seem that Commerce aided substantially in cultivating a field of confusion.

In the written notices concerning the Argentinean and Peruvian revocation proceedings, Commerce, apparently by mistake, identified ATMI itself as an interested party. However, after receiving Wilmer's March 30, 1990 objection letters "on behalf of ATMI and its members companies" objecting to the proposed revocations and terminations, Commerce refused to treat the letter as anything but an objection by ATMI alone. As such, Commerce treated the objection as insufficient, and warned that any attempt to name other interested parties would be rejected as untimely.

It is unjust to permit Commerce, which twice identified ATMI as an interested party with standing to object, to cry error after the objection from ATMI arrived. This Court holds the objections filed by Wilmer under the facts of this case were adequate objections on behalf of the eight interested petitioners. Furthermore Commerce should have accepted counsel's clarification of the objections pertaining to the eight petitioners; Wilmer attempted to explain by letters dated June 14, 1990, and July 13, 1990, but Commerce was not persuaded.

The record is clear that Commerce viewed the eight petitioning companies collectively as an interested party. The Court also gleans from the record that the eight petitioning companies are part of the ATMI membership. Nevertheless, Defendant argues that Wilmer's objection letters should have specifically identified those petitioning companies.

There are several possible reasons why Wilmer did not file the objections in that specific manner. The first possible reason is Commerce's errors in the Argentinean and Peruvian proceedings, discussed above.

Another possible reason is that Wilmer might have viewed, quite reasonably, such specific identification of the eight petitioning companies as redundant because those companies were in fact among the "members" of ATMI and Commerce knew or should have known this. A third possible reason is that Wilmer may not have learned of some of the proposed actions until the last minute; the objection letters were filed only one day prior to Commerce's published expiration date for filing objections. Considering the incomplete administrative record, it is difficult to discern what occurred and when. In all likelihood, Wilmer would have submitted objections in more precise detail had it anticipated Commerce's errors and omissions and narrow reading of the written objections.

The Defendant asks this Court on the one hand to strictly construe Commerce's regulations with respect to the form of objections to its proposed actions, and on the other hand to liberally construe the regulations governing the form of notice to be served upon interested parties. The Court refuses to apply Commerce's regulations is such an uneven manner.

In light of the muddled record, plagued by missing and misleading documents, the Court finds that Commerce should have read Wilmer's objections liberally and deemed them proper. Accordingly, the Court holds that Commerce's determinations to revoke and terminate the subject proceedings are not based upon substantial evidence on the record and are not in accordance with law.

Another factor that should be considered, although it was not discussed by either party, is that this action pertains to an already established countervailing duty proceeding. Unfair subsidies have already been found to exist. The countervailing duty orders and suspended investigations should not be terminated lightly without proper regard for the law.

This Court remands these proceedings to Commerce with the direction to rescind the revocation and termination orders in connection with which this action arises and for disposition of these matters consistent with this Court's ruling, and to report such action to this Court within 30 days from the date of entry of the judgment order in this action.

Plaintiffs' motion for judgment upon the agency record is granted.